JAMES LINDSAY *et al.*, Appellants, *v.* GEORGE L. DAVENPORT *et al.*, Appellees.

APPEAL FROM ROCK ISLAND.

A court of equity will reform a deed in which a mistake was made in the description of the premises intended to be conveyed, although more than twenty years have elapsed since its execution, and both the parties to it are deceased; where no rights of third persons have intervened, the heirs of the original parties being the litigants.

THIS was a suit in equity commenced in the Rock Island Circuit Court, by George L. Davenport, Bailey Davenport, and Susan M. Goldsmith, devisees under the will of George Davenport, deceased, against James Lindsay, and others, heirs of Thomas Lindsay, deceased, to correct a mistake in a deed, and to enjoin certain actions of ejectment.

On the 12th day of June, 1835, George Davenport sold to Thomas Lindsay his claim to the south-east fractional quarter of section thirty-six, in township eighteen, north range two, west of the fourth principal meridian, together with the fraction in front of it, and between it and the Mississippi river, and executed unto Thomas Lindsay a quit-claim deed therefor. By a mistake of the draughtsman, this deed was made to describe the *"north-west"* fractional quarter of said section thirty-six, instead of the *"south-east"* quarter of said section, which last was the tract intended to be described therein. This deed of June 12th, 1835, from George Davenport to Thomas Lindsay, was as follows, viz. :

KNOW ALL MEN BY THESE PRESENTS, That George Davenport, of Rock Island county, in the State of Illinois, for and in consideration of the sum of two hundred dollars, to him in hand well and truly paid by Thomas Lindsay, of Farnhamsburgh, in the State of Illinois, at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged by the said George, who thereof doth acquit and forever discharge the said Thomas, his heirs, executors and administrators, by these presents; has released and forever quit-claimed, and by these presents does release and forever quit-claim unto the said Thomas Lindsay, and his heirs and assigns, all the estate and estates, shares, purports and dividends, rights, title, interests, property, claims and demands, whatsoever, of him, the said George Davenport, in law or equity, or otherwise howsoever, of, in, to, or out of all that tract or parcel of land, known and designated as the *north-west* fractional quarter section number thirty-six (36), in township eighteen (18), of the second range of townships west of the fourth principal meridian, containing one hundred and ten and eighty-five one-hundredths acres.     Also, all the fractional tract or

parcel of land, lying between the aforesaid described tract and the Mississippi river, containing five and seven one-hundredths acres (in the actual possession and seizin of the said George Davenport now being), the aforesaid lands being situated in the State of Illinois, to have and to hold all and singular the premises hereby remised and released, or mentioned, or intended so to be, with the appurtenances, unto the said Thomas Lindsay, his heirs and assigns, to the only proper use and behoof of the said Thomas Lindsay, his heirs and assigns, forever; so that neither the said George Davenport, his heirs nor assigns, nor any other person or persons whosoever, lawfully claiming, or to claim by, from, or under him, the said George, shall, or may, at any time or times hereinafter, have, claim, challenge, or demand, any estate, right, title or interest of, in, to, or out of the said tract or parcel of land hereby remised, released, or mentioned, or intended so to be, with the appurtenances, or any part or parcel thereof, but thereof and therefrom shall and will be utterly excluded, and forever debarred by these presents.

IN WITNESS WHEREOF, The said George Davenport has hereunto signed his name and affixed his seal, this twelfth day of June, Anno Domini eighteen hundred and thirty-five, at Rock Island, in Rock Island county, in the State of Illinois.

GEORGE DAVENPORT. [SEAL.]

In presence of J. Emmerson.

This deed was not acknowledged, and was not recorded until May, 1854. It is conceded that, at the date of this deed, George Davenport had only what was called a squatter's claim to the said south-east fractional quarter of said section thirty-six—the tract which was intended to be described in said deed.

At the November term, 1854, of the Rock Island Circuit Court, James Lindsay, and others, heirs of Thomas Lindsay, instituted ejectment suits for the possession of said north-west fractional quarter of section thirty-six (36), against the devisees of George Davenport, deceased. This, it is alleged, is the first claim ever made by said Thomas Lindsay, or his heirs, under said quit-claim deed to the said north-west fractional quarter section, or any part thereof.

The complainants thereupon filed their bill in equity, alleging that it was the intention of the parties to this deed to describe the "south-east" fractional quarter of said section thirty-six, and not the "north-west" fractional quarter thereof; and that the word "north-west" was inserted therein instead of the word "south-east," through the mistake and inadvertance of the draughtsman. Complainants pray to have this mistake corrected, and to have said ejectment suits enjoined.

James Lindsay, and others, thereupon filed their cross bill, praying that said George L. Davenport, and others, be required

to convey said north-west fractional quarter section to them, as heirs of Thomas Lindsay, deceased.

George Davenport died in July, 1845, leaving the complainants his devisees. Thomas Lindsay died in September, 1839, leaving the Lindsays named in cross bill his heirs.

George Davenport never had title to the south-east fractional quarter of section thirty-six. In 1845 he acquired title by purchase to the north-west fractional quarter of said section. In 1835 George Davenport occupied said south-east fractional quarter, and had possession thereof under a squatter's claim, until he relinquished the same to Thomas Lindsay.

The evidence of complainant shows conclusively that there was a mistake in the description of the land in the deed from Davenport to Lindsay.

In the first place, there is strong evidence of the mistake in the deed itself. It goes on to describe said north-west fractional quarter section, and then to describe a "fractional tract or parcel of land lying between the aforesaid described tract and the Mississippi river, containing five and seven-one hundredths acres." Between the north-west fractional quarter of said section thirty-six and the Mississippi river, there is no such tract, but between the south-east fractional quarter of said section and the Mississippi river there is precisely such a tract. This appears from the plats of the lands in dispute, and also from the testimony of the witnesses sworn on the part of complainants.

It is further proved that, at the time this deed was executed, Thomas Lindsay was living on said north-west fractional quarter section as the tenant of George Davenport; that immediately after purchasing said claim he moved from said north-west fractional quarter on to said south-east fractional quarter, and continued to live thereon until he was dispossessed by a floating preëmption; that he repeatedly told various persons that he had purchased said George Davenport's claim to said south-east fractional quarter, for the sum of two hundred dollars, and that he had received a relinquishment or quit-claim therefor; that he never made any claim to said north-west fractional quarter section, and never attempted to collect rent of tenants living thereon; that Lindsay gave Davenport but two hundred dollars for the claim he purchased, and that at the time of this transaction said north-west fractional quarter was worth five or six hundred dollars or more.

Charles H. Case swears: I knew Thomas Lindsay, deceased, when he lived in a house now standing on the north-west fractional quarter of section thirty-six. George Davenport was his landlord. He occupied it several months, and then

moved to a house that he built on the east half of the same section. He resided in Davenport's house during the spring, summer and autumn of 1835. I had a conversation with Thomas Lindsay respecting his purchase, in the year 1835, of the east half of said section thirty-six. He said he bought of Col. George Davenport, for two hundred dollars. He resided on said section thirty-six three or four years, and then moved to Iowa. I had frequent conversation with Thomas Lindsay respecting his claim or title to lands in said section. He claimed the south-east fractional quarter of said section. He never, to my knowledge, claimed, or pretended to have title to any other portion of said section. He told me he had a kind of quit-claim deed for the east half of said section from Col. Davenport. There is no fractional tract or parcel of land between the said north-west fractional quarter of said section and the Mississippi river. There is a fractional tract or parcel of land between the south-east fractional quarter of said section thirty-six and the Mississippi river. It is the north-east fractional quarter of the section. Col. George Davenport did exercise acts of ownership over said south-east and north-east fractional quarters of section thirty-six, previous to June, 1835. He claimed the whole by squatter's claim.

Miles W. Conway swears: I resided in Col. Davenport's house, on the north-west quarter of section thirty-six, from April to November, 1835. I paid rent to Col. Davenport. I knew Thomas Lindsay. He resided in part of the house that stood on the north-west fractional quarter while I lived there. Thomas Lindsay never claimed rent of me for said house, nor insisted that he was the landlord, nor asserted any claim to said north-west fractional quarter. I should have been willing to give five hundred dollars for the claim to said north-west fractional quarter. When Lindsay removed he went to the east half of said section.

John W. Spencer swears: I was acquainted with Thomas Lindsay from the spring of 1835 until his death. He resided in Col. Davenport's house on the north-west fractional quarter of section thirty-six in the summer of 1835. I had a conversation with him in 1836. I was then on what he called the north-east quarter of said section. I asked him if that was the piece he bought of Col. Davenport; he said it was. Either directly after he moved, or while he resided on the north-west quarter, he put a house on the east half of said section, and about on the dividing line between the south-east and north-east quarters. I think Lindsay resided in the Davenport house during the spring and summer of 1835. When he left that house he moved to one that he built on the east half of

said section thirty-six. He continued to occupy this house some four or five years, I think. I never knew him to exercise any acts of ownership or possession on said north-west quarter after he moved to the east half of said section thirty-six. There is no fractional piece or parcel of land lying between the north-west fractional quarter of said section thirty-six and the Mississippi river.

David Hawes swears : I knew Thomas Lindsay from 1835 until the time of his death. When I knew him he resided on the north-west fractional quarter of section thirty-six, township eighteen, in the house of Col. George Davenport. He afterward went to reside on the east half of said section. I used to see him frequently. I never heard him set up any claim to the north-west quarter of said section.·

James Cobb swears : I boarded with my brother-in-law in the house of Col. Davenport, from August, 1835, for several years. Col. Davenport owned the house, and rent was paid to him. In the summer of 1835 Thomas Lindsay resided there, and continued there from four to six weeks. I remained there until March, 1838. I occupied, under Col. Davenport, the farm, with the ferry privilege attached, and I paid the rent to him. I knew Thomas Lindsay from the autumn of 1835 until his death. When he removed from Davenport's he went to the east part of said section. He never made any claim on me for rent, or possession, of any part of the said north-west fractional quarter. I never heard him assert any claim whatever to said north-west fractional quarter. He at several times informed me that he had bought two fractional pieces of land from Col. Davenport, for the sum of two hundred dollars. One hundred dollars was paid by himself, with the assistance of Dr. Emmerson, and the other hundred was on time. He was then putting up a house. He informed me that he was putting up said house on the land or claim he had bought from Col. Davenport. He erected said house on the east half of said section. He removed into said house about the first of October, 1835. He told me he had a quit-claim deed of the south part of the two fractions, about one hundred and ten acres. I mean the south-east fraction of the two. Lindsay indicated to me that Col. Davenport had conveyed to him the south-east fractional quarter of section thirty-six, township eighteen, containing one hundred and ten acres in one, and five acres between that and the river, as he said.

Jacob Norris swears : I knew James Lindsay, one of the defendants. I had a conversation with James about a claim he made to part of section thirty-six. It was while David

Hawes was contending for the fraction south of the road. He said that Howland, of Ottawa, had swindled his father out of the one hundred and ten acres north of the road, and he thought it was damned hard to lose the whole. These pieces of which he was speaking as bought from Col. Davenport, lay east in said section of the center north and south line. He said nothing to me about the pieces west of the line.

David B. Sears swears: I had a conversation with Thomas Lindsay in respect to his purchasing a claim to a portion of section thirty-six. I think it was in the summer of 1836, at his house, on the south-east fractional quarter of said section. He told me he had purchased of George Davenport a claim to said south-east fractional quarter, north of the Indian boundary line, and the north-east fractional quarter of said section. He did not, at that time, or at any other time, that I know of, make any claim to any other portion of said section.

John H. Case swears: I was acquainted with Thomas Lindsay from the time he landed here with his family, in the spring of 1835, until he removed to Iowa, and saw him frequently after he removed to Iowa until the time of his death. I was intimately acquainted with him during that time. I am acquainted with the section lines of section thirty-six, in township eighteen, north range two, west fourth principal meridian. I had a conversation with Thomas Lindsay in regard to his purchase of a claim to a portion of said section thirty-six. I think it was the day after his purchase from Mr. Davenport. He told me he had so purchased the day before, and stated that the claim ran just below the upper line of the fence which belonged to Col. Davenport, and that he had purchased the upper or east portion of said section north of the Indian boundary line. The line he indicated was the quarter section line running through the section north and south. He said he had purchased east of said line. He named the sum he paid for it, but I cannot positively state it; one or two hundred dollars. He thought it a great price. This was sometime in the summer of 1835. I think he said it was a deed of relinquishment, a quit-claim deed. He claimed the east part of said section, between the Indian boundary line and the Mississippi river, as the claim which he had bought of · Col. Davenport. Said Thomas Lindsay afterward went and lived on that portion of said section which he said he had bought of Col. Davenport, and he built a house at the upper end, near the river, near the line between the north-east and south-east fractional quarters of said section. I never heard Lindsay make any claim to any portion of the north-west fractional quarter of said section. At the time of

the conversation alluded to he was living in a house of Col. Davenport, situated on the north-west fractional quarter of said section. He said he rented it of Col. Davenport. While he was living in Col. Davenport's house, as before stated, and building his own house on the east part of said section, he said he was anxious to get up his house as soon as possible, in order to get rid of paying rent.

SHELDON, Judge, at November term, 1856, of the Rock Island Circuit Court, by his decree, directed that the deed should be reformed, and that the defendants named in the bill should be enjoined and prohibited from further prosecuting their said several actions of ejectment. From this decree the defendants below took an appeal.

WHITAKER and GRANT, for Appellants.

J. J. BEARDSLEY, MANNING & MERRIMAN, and C. E. PUTNAM, for Appellees.

CATON, J. We have rarely had a case of real importance, presenting less difficulties in its decision than this. The law is plain and well settled, and the facts are established more satisfactorily than is usually the case.

The bill is filed to reform a deed, in the drawing of which a mistake was made in the description of the premises intended to be conveyed. Although the deed was made many years ago, and both the original parties to it are deceased, no rights of third persons have intervened to embarrass or obstruct the operation of the general rule, and the controversy is between the heirs of the original parties alone.

The facts clearly established are simply these: In 1835 Col. Davenport had an improvement, with a dwelling house, upon the north-west quarter of section thirty-six, with a squatter's claim to it. He also claimed in the same right the south-east quarter of the same section, north of the Indian boundary. Lindsay, the grantee in the deed, with some other tenants, was occupying the house on the north-west quarter, as the tenant of Davenport. In June of that year, and while the tenancy continued, Davenport made the deed in question to Lindsay, for two hundred dollars. The land described in the deed is the north-west quarter, on which the house stood, and the bill alleges that the parties intended that the deed should describe the south-east quarter of the same section, and this is the controversy. No witness heard the bargain between the parties, and the declarations of Lindsay and the conduct of the parties are relied upon to establish the mistake. There is no proof, nor is there any pretense, that Davenport

ever sold more than one tract of land, with a fraction, to Lindsay, or made more than one deed to him. There can be no doubt, therefore, that the parties intended to describe in this deed the land which Lindsay had actually purchased of Davenport. So that when we are satisfied what land that was we know at once whether it is truly described in the deed. It is impossible to doubt that the land actually purchased by Lindsay was on the east half of the section, and that he never suspected, up to the time of his death, which occurred four years after he made the purchase, that he had bought or had any interest in the north-west quarter of the section. This is shown by his declarations, made to various witnesses, and often repeated from the day of the date of the deed up to the very time of his death. These are testified to by C. H. Case, and Copp and Norris, and Sears and J. H. Case. The very next day after he purchased, he told Case that he had the day before purchased the claim of Col. Davenport, which he pointed out and described as on the east half of the section. He made the same statements in substance, at various times, to the other witnesses. Immediately after the purchase he commenced erecting a house on the claim thus pointed out, as having been purchased by him of Col. Davenport, and while he was living in Col. Davenport's house, situated on the north-west quarter, and erecting his own on the east half of the section, he said to Mr. Case that he was anxious to get up his own house as soon as possible, in order to get rid of paying rent. If this is true, it is simply absurd to say that he supposed he had bought the north-west quarter, on which the house in which he was living was situated, and for which he was solicitous to avoid the payment of rent to the very man of whom his heirs now say he had just purchased it, and further, that he was building and improving on another claim of Col. Davenport, claiming it as his own by purchase from Davenport. During the four years which he lived, after this purchase, and living for some time after the purchase on the east half which he claimed to have purchased of Davenport, he never was known to set up any pretense of claim or title to the north-west quarter, but during all that time saw it in the possession and control of Davenport, who claimed it as his own. No claim was set up by Lindsay or his heirs until nineteen years after the date of the deed, for the reason, as they say, that they did not know it described this land. To discuss such facts as are here proved, for the purpose of showing that Lindsay supposed, and his heirs after him, that he had purchased the claim of Col. Davenport on the east half of the section, and that he did not purchase the north-west quarter, would be a useless waste of time. It is proved,

beyond a doubt or question, in our minds, that the words "north-west" were inserted in the deed by mistake, instead of the words "south-east." And this is all there is really of the case. I shall not quote law to prove that equity will correct such mistakes when clearly proved, and the rights of innocent purchasers have not intervened to make it inequitable to do so.

In the argument for the defense a point is made, and urged with apparent earnestness, that in this deed there is a covenant of seizin, which is an estoppel upon the complainants. An estoppel of what, I ask? Such a covenant may estop the covenantor from setting up a subsequently-acquired title against his deed, but it is the first time I ever heard it claimed that it would estop a court of equity from reforming a deed, so as to make it what the parties supposed it was and intended it should be. The complainants here are setting up no title whatever to the land sold, but they are asserting a claim to the land not sold, and they ask that the deed should be made to express the intention of the parties at the time it was made. When thus corrected, it becomes obligatory upon the parties, as they intended it should, and if it does contain a covenant of title, when the party had no title, his heirs may be liable on such covenant, or it may be used against them as an estoppel in a proper case. Here the doctrine of estoppel has no application whatever.

The decree of the circuit court was right and must be affirmed.

*Decree affirmed.*